**United States District Court**
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   LAL BHATIA,                          NO.  C 07-5583 CW
                                              CR 04-40071 CW
10            Movant,
                                         ORDER DENYING MOTION
11      v.                               UNDER 28 U.S.C. § 2255
                                         AND MOTIONS TO DISMISS
12   UNITED STATES OF AMERICA,           INDICTMENT, TO STRIKE
                                         RESPONSE, FOR EXPEDITED
13            Respondent.                REVIEW, AND TO CORRECT OR
     _____/  EXPUNGE RECORD AND
14                                       GRANTING MOTION TO AMEND
                                         (Docket ## 311, 324, 337,
15                                       340, 347 and 352)

16

17

18        Lal Bhatia moves under 28 U.S.C. § 2255 to vacate, set aside,

19   or correct his sentence.  Respondent has opposed the motion, Movant

20   has filed a traverse and, with permission of the Court, has filed

21   an additional traverse.  Movant also filed a motion to dismiss the

22   indictment and to commence disciplinary proceedings against the

23   Assistant United States Attorney (Docket # 324), a motion to strike

24   the response (Docket # 337), a motion for expedited consideration

25   of the § 2255 motion or for bail pending determination (Docket

26   # 340), a motion for leave to amend the § 2255 motion (Docket

27   # 347) and a motion to correct or expunge the record (Docket

**United States District Court**
For the Northern District of California

# 352).  Respondent has not addressed the latter five motions.
Having considered all the papers filed by the parties, the Court
hereby denies all of the motions except the motion to amend.[1]

BACKGROUND

On April 15, 2004, a federal grand jury returned an
indictment charging Movant with eight counts of mail fraud in
violation of 18 U.S.C. § 1341 and one count of money laundering in
violation of 18 U.S.C. § 1957(a).  On September 23, 2004, the grand
jury returned a superseding indictment charging Movant with nine
counts of mail fraud and eighteen counts of money laundering.  The
indictment alleged that Movant had engaged in a scheme to defraud
by making false representations to potential investors in Movant's
technology business, ABE Technologies, Inc.

A jury trial was held on February 13 through 28, 2006.
Movant did not testify.  His defense theory was that he did not
intend to defraud his investors and that the investors, who were
Movant's relatives, were angry because their investment had not
provided the return they had expected, but had assumed this risk

---

[1]The motion to dismiss the indictment is based upon the
prosecutor's alleged misconduct.  Movant made the same claim of
prosecutorial misconduct in his § 2255 motion, which is discussed
below and denied.  For the same reasons, the motion to dismiss the
indictment is denied.  The motion to strike the response is denied.
The motion for expedited determination is denied as moot.  The
motion to amend the § 2255 motion based upon Herring v. United
States, __ U.S. __, 129 S. Ct. 695 (2009), is granted.  The motion
to correct or expunge the record is based upon the alleged
inaccuracies in the search warrant.  Movant made virtually the same
argument in his his § 2255 motion in his claim of ineffective
assistance of counsel for failure to file a motion to suppress the
warrant, which is discussed below and denied.  For the same
reasons, the motion to correct or expunge the warrant is denied.

2

because they had been notified in a private placement memorandum not to rely on any oral representations.  Reporter's Transcript (RT) at 279-94 (Defense Opening Statement); RT at 1846-48; 1851-54 (Defense Closing Argument).

On February 28, 2006, the jury returned a verdict of guilty on all counts charged in the superseding indictment.  On October 23, 2006, Movant was sentenced to a term of four years in custody as to each count, to run concurrently.  On January 23, 2008, the Ninth Circuit affirmed the judgment.  On July 1, 2008, Movant timely filed this § 2255 motion.

LEGAL STANDARD

A prisoner, in custody under sentence of a federal court, making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 in the court which imposed the sentence.  <u>Tripati v. Henman</u>, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under 28 U.S.C. § 2255, a federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States.  <u>United States v. Barron</u>, 172 F.3d 1153, 1157 (9th Cir. 1999).

In reviewing a § 2255 motion, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  To call for an evidentiary hearing, the motion must provide specific factual allegations which, if

**United States District Court**
For the Northern District of California

true, state a claim on which relief could be granted.  United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

EVIDENTIARY OBJECTIONS

Movant objects to Respondent's evidence on the ground that it is not properly authenticated by affidavit or declaration. However, Respondent's exhibits consist of excerpts from the record which does not need to be authenticated.  Therefore, Movant's objections are overruled.

DISCUSSION

I. Ineffective Assistance of Counsel

Movant argues that his retained defense team, consisting by the time of the trial of William Houser, Sunita Kapoor, Paul Puri and Edith Purser, failed to provide effective assistance of counsel.

A. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.

To prevail under Strickland, a movant must pass a two-prong test.  First, the movant must show that counsel's performance was deficient in a way that falls below an objectively reasonable

4

United States District Court
For the Northern District of California

standard.  466 U.S. at 687-88.  Second, the movant must show that such deficiency prejudiced him.  Id. at 687.  The first prong of Strickland requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id.  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Id. at 689; Wildman v. Johnson, 261 F.3d 832, 838 (9th Cir. 2001).  A difference of opinion as to trial tactics does not constitute denial of effective assistance, United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available.  Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984). Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances.  Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Under Strickland's second prong, the movant must show that counsel's errors were so serious as to deprive the movant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 688.  The test for prejudice is not outcome-determinative, i.e., the movant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing

**United States District Court**
For the Northern District of California

that the defense was impaired is also not sufficient. Id. at 693. The movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694. It is unnecessary for a federal court considering an ineffective assistance of counsel claim to address the prejudice prong of the Strickland test if the movant cannot even establish incompetence under the first prong. Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

B. Counsel's Failure to Present a Valid Defense

Movant argues that counsel were ineffective by erroneously relying upon a "safe harbor" defense to the mail fraud counts. This defense was that the private placement memorandum (PPM), which warned investors of the risks associated with their investments, insulated Movant from criminal liability for any oral promises he may have made to them. In support of this claim, Movant submits the declaration of his lead trial attorney, Mr. Houser, who states,

> Declarant's plan was to rely upon a document called a
> Private Placement Memorandum, which the complaining
> investors had reviewed and signed before making their
> investment. In this document, they were warned of the
> risks, and waived them. I also felt that this document
> acted as a "Safe Harbor" under the securities laws, which
> afforded to seller's [sic] of securities protection from
> false and fraudulent "oral" claims from investors who
> were unhappy with their returns. It was my experience in
> the civil arena that such a "Safe Harbor" provision would
> act as a bar to any liability, not just civilly, but
> criminally also.

Houser Dec. at ¶ 9.

Respondent contends that defense counsel argued a valid

6

defense to mail fraud: that Movant lacked the intent to defraud anyone and that the charges were the result of complaints from investors who were seeking revenge against Movant.

The elements of mail fraud are (1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) the specific intent to deceive or defraud. United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008).  The Court instructed the jury that, to find Movant guilty of mail fraud, it had to find beyond a reasonable doubt that Movant had the intent to defraud.  Docket # 142 (Final Jury Instructions) at 7 (mail fraud instruction).

The record shows that, although defense counsel presented the "Safe Harbor" theory, Mr. Houser also argued lack of intent to the jury.  See e.g. RT at 1845-46, 1848-51.  Specifically, Mr. Houser argued that Movant lacked the intent necessary to commit fraud based on the facts that he returned to the investors a large amount of the money they had invested and that he properly spent the invested money on his business rather than on himself.  Mr. Houser also argued lack of intent based on the facts that the decline in the dot com market caused financial problems for many companies, and that Movant's company was just one of many that suffered.  RT at 1854; 1858.  In addition, he argued that the family witnesses who testified for the government lied to help the government collect money from Movant which they hoped would go to them, that the investors were financially sophisticated people who understood the risks of investing in a start-up company and that several other family members who invested and lost money did not accuse Movant of

**United States District Court**
For the Northern District of California

fraud.  RT at 1847, 1855.  Therefore, counsel presented many theories upon which the jury could have decided that Movant lacked the intent to defraud.  There is no evidence that a better defense was available.  Counsel's performance was not deficient in this regard.

Movant also argues that counsel was ineffective for failing to present the valid defense of actual innocence.  As discussed above, counsel argued that Movant lacked the intent to defraud.  This amounts to an argument that Movant was innocent.  Therefore, counsel did not perform deficiently by failing to argue that Movant was innocent.

Even if counsel's performance was deficient, there is no showing of prejudice.  The government's case against Movant was strong.  The government presented many witnesses who testified that Movant induced them to invest hundreds of thousands of dollars with him by telling them that ABE owned an important technology patent that was sought after by Sabeer Bhatia, no relation to Movant, the founder of Hotmail, a successful business.  Movant represented to potential investors that Sabeer Bhatia's company, Arzoo, in order to acquire the patented technology, had entered into an agreement to buy ABE.  He told the investors that, once the deal went through, ABE stock would tremendously increase in value such that a $300,000 investment would multiply into $3 million in a few months.  Evidence showed that neither Movant nor ABE owned any technology patents and that Sabeer Bhatia did not know Movant.  When the investors inquired after their investments, Movant falsely told

8

**United States District Court**
For the Northern District of California

them that Microsoft and Dell Computers were interested in buying Arzoo because of Arzoo's imminent purchase of ABE's technology. Movant reported to the investors that he was negotiating with Bill Gates and Steve Balmer of Microsoft as well as Sabeer Bhatia.  He represented that these companies' involvement had triggered anti-trust issues and that the companies were involved with hearings before the Securities and Exchange Commission.  Movant created various documents to support his fictions and mailed them to some of the investors.  In reality, there were no hearings before the SEC involving ABE.  The government's forensics examiner, Donald See, testified that metadata from Movant's computer indicated that graphic files of Arzoo's logo and Sabeer Bhatia's signature had been cut and pasted to create letters that appeared to be written by Sabeer Bhatia.

Thus, the government's evidence showed that Movant had made many misrepresentations to investors to cause them to invest with him.  Because the government's case was so strong, it is unlikely that his counsel's presentation of a safe harbor defense affected the verdict or caused him prejudice.

C. Counsel Prevented Movant from Testifying

Movant argues that his counsel were ineffective because Mr. Houser, one of his retained attorneys, denied Movant his right to testify.

Mr. Houser indicates that he is an experienced civil lawyer who had represented Movant in other civil matters and had assisted on the civil aspects of Movant's criminal case.  Houser Dec. at

**United States District Court**
For the Northern District of California

¶ 6.   Movant asked Mr. Houser to participate in representing him at the criminal trial.  _Id._ at ¶ 8.  Mr. Houser agreed to do so on the condition that Movant not testify.  _Id._

Mr. Houser states:

As the case progressed, Mr. Bhatia beseeched me several times again to let him testify.  He wanted the ABE story to come out, and was concerned because it was not being told; that it was a legitimate business, a real effort at a startup technology company, with real expenses, payroll, staff, research and development, contracts with other established businesses; the vision he had for ABE Technologies; to testify that he personally got none of the investor money, it all went to ABE expenses.  I again threatened Mr. Bhatia that if he testified, I would withdraw from the case.  I felt that strongly about it, and my plan for his defense.  It was just my naive impression that, in the criminal arena, a criminal defense attorney never lets his client testify.

Houser Dec. at ¶ 10.

As Respondent points out, Mr. Houser did not deny Movant his right to testify, but only required Movant to agree not to testify if he wanted Mr. Houser to assist in representing him at trial. Thus, if Movant did not want to waive his right to testify, he could have insisted on testifying.  Mr. Houser might or might not have moved to withdraw, which might or might not have been allowed.

The right to testify on one's own behalf at a criminal trial is one of the rights that "are essential to due process of law in a fair adversary process." _Rock v. Arkansas_, 483 U.S. 44, 51 (1987). The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony.  _Id._ The right to testify is also found in the Compulsory Process Clause of the

Sixth Amendment, which grants a defendant the right to call "witnesses in his favor." <u>Id.</u> at 52.

Because the right to testify is personal, it may be relinquished only by the defendant, and the relinquishment must be knowing and intentional. <u>United States v. Joelson</u>, 7 F.3d 174, 177 (9th Cir. 1993). Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to call him to testify. <u>Id.</u> Thus, waiver of the right may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. <u>Id.</u> A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court or discharging his lawyer. <u>Id.</u> "When a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify." <u>United States v. Nohara</u>, 3 F.3d 1239, 1244 (9th Cir. 1993). If a defendant waives his right to testify, he also waives his right to claim ineffective assistance of counsel due to his counsel's failure to call him as a witness. <u>McElvain v. Lewis</u>, 283 F. Supp. 2d 1104, 1117 (C.D. Cal. 2003); <u>see also</u>, <u>United States v. Edwards</u>, 897 F.2d 445, 446-47 (9th Cir. 1990) (when defendant abides by counsel's tactical decision not to call his client to testify, defendant waives the right to testify even if he was not aware that he had a right to be heard if he so chose).

Mr. Houser made a tactical decision to advise Movant not to testify. Although, in hindsight, Mr. Houser states that this might

11

**United States District Court**
For the Northern District of California

have been ill-advised, tactical decisions are not judged
retrospectively.  During the trial, Movant did not indicate to the
Court that he wanted to testify and apparently he did not inform
his defense team that he insisted on doing so, even if that meant
Mr. Houser would try to withdraw as counsel.  Because Movant did
not do so, he waived his right to testify and his right to base a
claim of ineffective assistance of counsel on this ground.

Furthermore, even if Movant had been prevented from testifying
as he contends, he fails to establish prejudice.  Movant indicates
that his testimony would have shown the viability of ABE's business
plan and operations, the similarities between Arzoo and ABE,
Movant's Microsoft and Dell business development efforts, the dot
com slowdown, Movant's relationship with his family members who
testified against him, and that he made no misrepresentations in
securing investments from his family members.  Movant argues that
this testimony would have established that he believed that all the
statements he made were true and thus he lacked the intent to
deceive.  He concludes that, had he testified, there is a
reasonable probability that the jury would have found that he had
no intent to defraud and that any misrepresentations, even if made,
were puffing and not material.

However, most of the testimony Movant proposes had to do with
undisputed, tangential facts about the state of the market and
ABE's business expenses and operations.  The most relevant part of
his proposed testimony, that he did not make any misrepresentations
to potential investors, would have had to overcome the testimony of

five family members victimized by Movant who corroborated each other's stories about his misrepresentations.  In light of the witnesses' testimony, Movant's denial that he made these misrepresentations is unlikely to have had any impact on the jury's verdict.

Therefore, Movant's claim for ineffective assistance of counsel on this basis is denied.

D. Counsel's Failure to Call Additional Witnesses

1. Forensic Accountant

Movant argues that counsel was ineffective for failing to call a forensic accountant to explain ABE's complex business records, which would show that ABE was a legitimate business enterprise, and to verify that dot com companies were all suffering financial troubles due to the economic downturn after the government witnesses had made their investments in ABE.

Respondent argues that defense counsel did not need to call a forensic accountant because all the facts about which an accountant would have testified were either undisputed or established during the trial.  The government's evidence showed that there were substantial costs associated with running ABE and, through cross-examination of government witnesses, the defense established that many dot com firms were in financial trouble during the relevant time period.  See e.g., RT at 416-418, 464-69, 474, 858 and 924-25.  Thus, Movant was not prejudiced by the lack of a forensic accountant because the jury was aware of the evidence that Movant claims the accountant would have presented.  Furthermore, as

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

discussed previously, the case against Movant was strong and a forensic accountant's testimony regarding ABE's legitimate business expenses and the dot com downturn would be unlikely to have any impact on the outcome of the trial.  Therefore, Movant has not established ineffective assistance of counsel on this ground.

     2. Handwriting Expert

Movant also argues that counsel were ineffective for failing to call a handwriting expert to rebut the government's evidence that Movant forged certain documents.  Movant claims that Susan Morton, the government's handwriting expert, found that some documents were not forged.  He argues that, when the government failed to disclose this information to the jury, defense counsel should have called Ms. Morton or another handwriting expert. Movant also claims that counsel was ineffective for failing to interview Ms. Morton or to review her report.

Respondent correctly points out that Ms. Morton's report was inconclusive and that it did not state, as claimed by Movant, that he did not forge the documents in question.  Respondent also correctly points out that, in lieu of calling Ms. Morton to testify, the parties stipulated as to the opinion in Ms. Morton's report and the stipulation was read to the jury by defense counsel. The stipulation indicated that Ms. Morton could not determine whether Movant wrote three signatures on documents admitted into evidence, and that a signature on another document appeared to be a genuine signature of that person.

Movant's claim regarding counsel's failure to call a

14

handwriting expert does not support a finding of ineffective assistance of counsel because counsel did present Ms. Morton's report to the jury.

    3. Lay Witnesses

    Movant argues that counsel was ineffective for failing to call a sufficient number of investors who would testify that Movant did not make false promises to them before they invested in his company.  However, Movant acknowledges that counsel called four such investors, all of whom testified that Movant made no misrepresentations to them.  Because additional witnesses, if there were any, testifying to the same facts would have been cumulative, counsel's performance was not deficient for not calling more than four such witnesses, and Movant was not prejudiced.  Therefore, this argument does not support a claim of ineffective assistance of counsel.

    E. Counsel's Broken Promises to the Jury

    In the opening statement, counsel told the jury:

    Defense will show finally that Renee Wagner, who's a
    certified public accountant and a forensic accounting
    expert, has reviewed ABE Tech's financial records and
    will confirm for all of you, Mr. Bhatia paid employees,
    had normal business expenses.  She will also talk about
    the marketing conditions at the time ABE Tech was
    offering and testify that ABE Tech is just like thousands
    of other dot-com companies at the time that had big
    dreams but failed.

RT at 295.  Counsel did not call Ms. Wagner to testify for the defense.


    Movant argues that counsel provided ineffective assistance by

**United States District Court**
For the Northern District of California

promising the jury in the opening statement that Ms. Wagner would testify and then not calling her.   Movant also argues that counsel was ineffective for telling the jury in opening statement that the government's witnesses had threatened Movant's life, and not producing such evidence.   In his closing argument, the prosecutor pointed out both of these broken promises.   RT at 1836.

### 1. Promise of Forensic Accountant

"Although a failure to produce a promised witness may under some circumstances be deemed ineffective assistance, the determination of inefficacy is necessarily fact-based." United States v. McGill, 11 F.3d 223, 227-28 (1st Cir. 1993) (finding that not calling a promised expert, when the expert was impeachable and the relevant testimony had been introduced from another source, was a reasonable tactical decision).   Although defense counsel's broken promise to present certain evidence to the jury may be justified when unexpected developments warrant such a change in trial strategy, if the failure to present the promised testimony is not caused by unforeseeable events, the attorney's broken promise may be unreasonable.   United States v. Hampton, 347 F.3d 219, 257 (7th Cir. 2003).

Movant presents no evidence indicating that Ms. Wagner was available to testify and that her testimony would have been exculpatory.   Nor does he present evidence that counsel had no reason to believe that she would testify when he gave his opening statement.   The Court can only presume that counsel's later decision not to call her was a tactical one.   In any event, as

16

United States District Court
For the Northern District of California

discussed above, the facts about which defense counsel promised Ms. Wagner would testify were undisputed and established during trial. Thus, there was no need to call a forensic accountant. Additional evidence that ABE was a business with a number of employees and expenses or that the dot com industry experienced a downturn would not have refuted the evidence that Movant used ABE to defraud investors. Therefore, Movant was not prejudiced by the fact that Ms. Wagner did not testify.

None of the cases Movant cites in support of this argument are applicable because each involves an unfulfilled promise to call a witness central to the defendant's defense. Unlike these cases, here the promised testimony would have been cumulative and would not have undermined the prosecution's evidence against Movant.

Therefore, this argument does not support the claim of ineffective assistance of counsel.

### 2. Witnesses' Threats[2]

In the opening statement, counsel said that Movant's relatives threatened his life. RT at 290. Counsel failed to produce evidence of these threats. The record does not disclose why counsel made this promise nor why counsel did not keep it.

Although counsel's performance may have been deficient for making this promise to the jury without reason to believe it could be supported, it caused no prejudice because whether members of Movant's family threatened to kill him was not relevant to whether

---

[2]Movant submitted the claim regarding the witnesses' threats in his traverse. Therefore, Respondent has not addressed it.

17

Movant made material misrepresentations to them.  Therefore, this argument does not support the claim of ineffective assistance of counsel.

    F. Counsel's Failures Regarding Fraudulent Documents

    Movant argues that counsel were ineffective in defending against evidence of allegedly fraudulently created documents. Donald See, the government's forensic computer specialist, testified that the documents in question had been created and found on Movant's computers.  RT at 1507-13.  Movant argues that his counsel should have objected to the admission of these documents and Mr. See's testimony about them on "chain of custody" grounds. Movant's argument is premised on the fact that Marzban Mody, an ABE employee, had access to Movant's computers on which the documents were found and his claim that Mr. Mody actually created the documents.  In support of this theory, Movant submits excerpts of a transcript of Mr. Mody's November 19, 2007 debtor examination in bankruptcy case no. SA MC 07-13.  Movant's Ex. 2.  During the examination, Mr. Mody indicated that, while he was an employee of ABE, Movant often left his laptop computer at the office and asked Mr. Mody to bring it to Movant's residence, which Mr. Mody did. Movant's Ex. 2 at 380.  Movant claims this transcript proves that Mr. Mody has "confessed to the government regarding his forgeries." Mr. Mody's testimony, that he had access to Movant's computer, does not establish that he created the fraudulent documents on that computer or even that he had access to the documents.  Therefore, this evidence fails to establish Movant's claim and counsel's

United States District Court
For the Northern District of California

failure to object to the documents and to Mr. See's testimony based on the chain of custody of the computer was not deficient.

Movant also claims counsel should have cross-examined Mr. See more effectively.  However, on cross-examination, Mr. See admitted that he could not say that Movant created the documents in question just because they appeared on a computer that belonged to him.  RT at 1514.  There is no reason to believe counsel could have done more.  Thus, counsel was not ineffective in the cross-examination of Mr. See.

Movant also faults his counsel for failing to present evidence that Mr. Mody created the documents.  However, as discussed above, Movant's claim that Mr. Mody created the documents is pure speculation.  Counsel's performance was not deficient for failing to put on such evidence.

Movant also argues that counsel should have objected when the prosecutor, during opening and closing statements to the jury and when questioning witnesses, falsely stated that Movant had forged or fraudulently created documents.  Respondent replies that its arguments were fully supported by the evidence.  During the trial, several witnesses testified that relevant documents were not written or signed by them.  See e.g., RT at 674, 850, 852, 887. There were no meritorious grounds for objecting to this testimony. Thus, the government properly referred to this in opening and closing arguments and any objections by defense counsel would have been overruled.

G. Counsel's Failure to File a Motion to Suppress

**United States District Court**
For the Northern District of California

Movant argues counsel were ineffective for failing to move to suppress evidence that was seized pursuant to a search warrant which contained material misrepresentations and omissions.[3]

A warrant is valid only if it is supported by an affidavit establishing probable cause. United States v. Stanert, 762 F.2d 775, 778 (9th Cir. 1985), amended 769 F.2d 1410 (9th Cir. 1985). The Supreme Court has held that an affidavit that supports a warrant is presumed to be valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). The party challenging the affidavit may overcome this presumption by alleging that the affidavit contains deliberate falsehoods or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Id.; Forster v. County of Santa Barbara, 896 F.2d 1146, 1148 (9th Cir. 1990). Allegations of negligence or innocent mistake are insufficient. Franks, 438 U.S at 171. If the material in the warrant that is proved to be false is set aside and there remains sufficient content in the warrant to support a finding of probable cause, no hearing is required. Id.

On April 29, 2005, a United States magistrate judge authorized the search of Movant's residence based upon FBI Special Agent Janet Berry's fifty-seven page affidavit in support of the warrant. The affidavit described three fraudulent schemes involving commercial

---

[3]In the case of United States v. Bhatia, CR 05-0334 SBA, Movant did file a motion for an evidentiary hearing pursuant to Franks v. Delaware regarding this warrant. This motion was denied by the Honorable Saundra Brown Armstrong on February 7, 2006. See Docket ## 79, 80, 95, 102, 112 and 392 at ¶¶ 29-34 (Transcript of February 7, 2006 hearing) in CR 05-0334 SBA.

**United States District Court**
For the Northern District of California

real estate loans.  The affidavit presented evidence that Movant convinced victims to advance loan fees for large loans that Movant never intended to fund.  On May 3, 2005, agents executed the search warrant and seized computer equipment from Movant's residence.

Movant claims the warrant was deficient because Agent Berry failed to include in her affidavit the following allegedly exculpatory information.  In civil action No. H-04-3961, <u>Inderra Houston, LP v. Florent; Advantis Real Estate Servs. Co. dba Advantis GVA, A St. Joe Company; Bhatia; Mody; Wolfe & Turner Investments, Inc.; and Yurgo</u>, filed in a Texas district court against Movant and others regarding one of the transactions described in the warrant, the complaint alleged that the defendants made misrepresentations to induce the plaintiff to pay fees for a loan which the defendants never intended to fund.  <u>See</u> Movant's Ex. 3.  Movant claims that Ralph Abercia, Sr. and Ralph Abercia, Jr., the Texas plaintiff's principals, had signed agreements that the advance loan fees they paid were non-refundable.  Mr. Abercia, Sr. was an attorney with substantial experience in commercial real estate development.  The Abercias had been advised by a real estate attorney during the loan negotiations.  Gerry Florent, another named defendant, was solely responsible for the fraud, according to Movant.  The general counsel for another entity involved in the transaction had conducted due diligence on one of the defendant companies and had been aware that it had no assets.  Mr. Abercia, Sr. had fraudulently defaulted on a loan in the amount of six million dollars.  The Texas plaintiff, although seeking a real

estate development loan, had no building permits or equity in place for the development project.  Some of the witnesses from whom Agent Berry obtained her information, such as Mr. Mody, were involved in the Texas lawsuit against Movant.  Movant claims that he and Mr. Mody had had a falling out so that the information that Agent Berry received from Mr. Mody was not reliable.  Movant purports to support some of these allegations with exhibits.

Movant represents that the Texas district court found that Movant had not made material misrepresentations and that no fraud had occurred in those transactions.  Movant submits transcripts of two hearings from the Texas case in support of his claim that the district court found that Movant did not commit fraud.  Movant's Exs. 4, 5.  However, these transcripts are of interlocutory hearings during which the court made no findings.  Movant submits a document indicating that Mr. Florent's employment was terminated for a policy violation; the document does not indicate Mr. Florent was terminated due to fraud.  Another document indicates that Mr. Abercia, Sr. defaulted on a six million dollar loan, but it does not indicate the default was due to fraud.

Further, Movant's allegations, even if true, do not negate the probable cause that Movant was involved in a fraudulent scheme. For instance, that some of the victims or their advisors were experienced does not refute the allegations that Movant made material misrepresentations.  Even if the loan fees were non-refundable, this does not excuse material misrepresentations.  In sum, many of the documents submitted by Movant do not support his

**United States District Court**
For the Northern District of California

claims and none of Movant's allegations refutes the conclusion that Agent Berry's detailed affidavit established probable cause that Movant was involved in a scheme to defraud.

In his supplemental traverse, Movant emphasizes that any misrepresentations in the Texas case were made solely by Florent. He argues that this proves that he did not make misrepresentations and, thus, Agent Berry's affidavit was false.  The determination of whether Movant made misrepresentations in the Texas case is not before the Court and could not be made on the record before it. Determinative of whether Agent Berry's affidavit truthfully established probable cause is that Movant has not shown that Agent Berry was aware of any of the evidence in the Texas case prior to the submission of her affidavit.  Movant's interpretation of the Texas case does not establish that the affidavit contained material misrepresentation.

Movant also claims that Agent Berry's affidavit was insufficient because she failed to state facts tying Movant's residence to the alleged crime, and her experience and training were insufficient to establish the necessary connection.  A magistrate need only ascertain that there is a fair probability of finding incriminating evidence at a certain place, considering the type of crime, the nature of the items sought and normal inferences about where a criminal might hide the evidence.  United States v. Parks, 285 F.3d 1133, 1142 (9th Cir. 2002).  In making this determination, a magistrate may rely on the training and experience of police officers.  Id.

23

**United States District Court**
For the Northern District of California

In her affidavit, Agent Berry attested to the fact that she had been investigating Movant for more than three years and had become familiar with numerous transactions and attempted transactions. She concluded that the specific transactions described in the affidavit were fraudulent and that, based on her experience in investigating white collar crime for over sixteen years, the records of the fraudulent transactions would be kept on Movant's computers. Agent Berry also concluded that all of Movant's computers would be at his residence because his last known office location was closed.

Movant cites a recent Supreme Court opinion, Herring v. United States, 129 S. Ct. 695 (2009), to support his claim that the evidence should have been suppressed. In Herring, the Court held that when an unlawful search is the result of negligent police conduct rather than systemic error or reckless disregard of constitutional requirements, the exclusionary rule does not apply. Id. at 701-03. This weakening of the exclusionary rule does not support Movant's claim.

Based on Agent Berry's attestations, the magistrate judge correctly concluded that a fair probability existed of finding incriminating evidence on computers located at Movant's residence.

Counsel was not ineffective for failing to file a motion to suppress based on Agent Berry's affidavit.

H. Counsel's General Incompetence and Lack of Preparation

In addition to his specific complaints of ineffective assistance of counsel discussed above, Movant claims that counsel

24

were inexperienced and generally incompetent, failed to perform

adequate pretrial investigation, failed to interview potential

defense witnesses and failed properly to cross-examine government

witnesses.

### 1. Inexperience

The limited experience of a criminal defense attorney, by

itself, is insufficient to support a claim of ineffective

assistance of counsel.  United States v. Cronic, 466 U.S. 648, 665

(1984); Ortiz v. Stewart, 149 F.3d 923, 933 (9th Cir. 1998).

Movant's four-attorney retained defense team exhaustively

litigated his case by filing motions, resisting discovery to the

government, conducting lengthy cross-examinations, calling

witnesses and giving opening and closing statements.  Movant

complains that counsel made some mistakes, such as arguing during

opening statement or asking witnesses questions without laying the

proper foundation, so that, at times, the Court made suggestions

regarding how counsel could properly proceed.  However, counsel's

inexperience is insufficient to support Movant's claim of

ineffective assistance.

The Court takes judicial notice that two lawyers on his

defense team, Paul Puri and Sunita Kapoor, represent Movant in a

later-filed criminal case against him before another judge of this

Court.  See CR 05-0334 SBA.  Ms. Kapoor represented Movant when he

was indicted in that case, see docket # 5, and is still counsel of

record.  Mr. Puri was retained in that case on April 25, 2006,

after the conclusion of the trial in this case, and is also still

United States District Court
For the Northern District of California

counsel of record.  See Docket # 114.  Therefore, Movant must believe at least these two of his four-person defense team are sufficiently competent in criminal defense to represent him again.

Movant's claim based on lack of experience and general incompetence fails.

## 2. Pre-trial Investigations

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  Strickland, 466 U.S. at 691.  "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002).  Counsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client.  Avila v. Galaza, 297 F.3d 911, 924 (9th Cir. 2002).

Movant claims that he gave counsel leads as to corroborating witnesses and evidence, but counsel failed to follow up on them. As noted above, his defense team did call four witnesses who invested in ABE and who testified that Movant did not make any fraudulent statements or promises to them.  RT at 1599-1695. Movant does not indicate what other witnesses he mentioned to counsel and what they would have said.  If Movant had in mind other investors who would have provided testimony similar to that of his four defense witnesses, counsel's performance was not deficient nor was Movant prejudiced by a failure to put on duplicative testimony.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Furthermore, apart from additional evidence of ABE's expenses, Movant does not indicate what documents counsel failed to investigate.  As discussed previously, evidence of ABE's expenses was elicited through government witnesses and, more importantly, did not disprove the fraud charges.  Therefore, the claim for ineffectiveness based on failure to investigate is denied.

Movant also claims counsel did not spend sufficient time consulting with him.  Movant does not indicate what else he could have communicated to counsel had they spent more time discussing the case with him.  Therefore, the claim of ineffective assistance of counsel on this ground is denied.

> 3. Cross-Examination

Movant claims that counsel was ineffective for failing to elicit testimony from Krishna Kirpalani, the government's primary complaining witness, of her bias toward him.  However, counsel did elicit this testimony.  See RT at 1091, 1108-09, 1111.  There is no evidence that Ms. Kripalani had additional bias toward Movant that was not elicited.  Therefore, this claim fails.

In sum, all of Movant's claims of ineffective assistance of counsel are denied.

II. Prosecutorial Misconduct

Movant argues that the government improperly moved to quash a trial subpoena he issued pursuant to Federal Rule of Civil Procedure 17(c) to Ms. Kirpalani requesting the production of a copy of Movant's grandfather's will.  Movant also argues that the prosecutor improperly allowed Ms. Kirpalani to testify falsely when

she stated that she was not aware of a will left by Movant's grandfather. Movant's theory is that Ms. Kirpalani, by hiding the will, defrauded Movant's father and his heirs, including Movant, of sixteen million dollars, and this shows that she was prejudiced against Movant.

The appropriate standard of review for a claim of prosecutorial misconduct is the narrow one of a denial of due process. <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." <u>Id.</u>

A. Waiver

Respondent argues that, because Movant did not raise this claim on appeal, it is waived. A § 2255 motion will not be allowed to do service for an appeal. <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998); <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994). A federal prisoner who fails to raise a claim on direct appeal procedurally defaults the claim and may obtain collateral review of it under § 2255 only if he or she can show either cause and prejudice or actual innocence. <u>Bousley</u>, 523 U.S. at 621 (prisoner who failed to challenge validity of guilty plea on appeal procedurally defaulted claim); <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 928 (9th Cir. 1998).

Because Movant did not raise this claim on appeal, it is procedurally barred unless he can show cause and prejudice or actual innocence. Notwithstanding whether Movant can show cause and prejudice or actual innocence to avoid a procedural bar, as

28

discussed below, this claim is denied on the merits.

B. Motion to Quash

Before trial, the government moved to quash subpoenas issued by Movant, including the one to Ms. Kirpalani for production of the will.  Movant objected, arguing that the government lacked standing to make such a motion.  On December 12, 2005, the Court held a hearing on this issue.  Respondent's Ex. G.  The Court held that the subpoenas were invalid because the defense subpoenaed the records for a date prior to the trial without an order of the Court.  Id. at 13.  The Court also found that the subpoenas were "wildly overbroad and don't bear any relation to matter that can be received into evidence."  Id. at 15, 17.  The Court held that the standing issue was moot because it sua sponte ruled that the subpoenas were invalid.  Id. at 17.

Therefore, the government's motion to quash Movant's subpoena caused no prejudice to Movant because the Court did not rely on it in invalidating the subpoenas.  This claim is denied.

C. Perjured Testimony

When the prosecution obtains a conviction by the use of testimony which it knows or should know is perjured, such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  United States v. Agurs, 427 U.S. 97, 103 (1976).  The same result obtains when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  Prosecutors will not be held

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

accountable for discrepancies in testimony where there is no evidence from which to infer prosecutorial misconduct and the fairness of the trial was not materially affected.  United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir. 1995).

In sum, to prevail on a claim based on Agurs and Napue, the petitioner must show that (1) the testimony was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material. United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003).

On cross-examination, defense counsel asked Ms. Kirpalani, "Are you aware of any will left by Lal Bhatia's grandfather?"  RT at 1114.[4]  Ms. Kirpalani responded, "No."  RT at 1115.  Movant claims that Ms. Kirpalani's answer was false and the prosecutor had a duty not to allow Ms. Kirpalani to testify falsely.  In support of this claim, Movant submits the transcript of Ms. Kirpalani's subsequent August 20, 2007 deposition in a civil action in which she was sued by Movant's father, her brother, for fraud, deceit, breach of fiduciary duty, conversion and other causes of action. Movant's Ex. 26.  Ms. Kirpalani testified that she knew of a will and believed it was located in India.  Id. at 10.  She also testified that she first became aware of the will in April, 2007, when she received a scanned copy by email from a relative in India. Id. at 10-11.  She stated that, at the time of Movant's criminal trial, she was not aware of the will.  Id. at 27.

---

[4]Movant's grandfather was Ms. Kirpalani's father.  Movant's Ex. 26 at 12.

30

**United States District Court**
For the Northern District of California

Movant argues that "even though the prosecutor may not have 'known' of Kirpalani's perjury, based upon information available to him, the prosecutor was required to inquiry [sic] regarding the existence of the will and the estate of Johnny Bhatia's estate [sic] and whether Kirpalani's interests were opposed to" Movant's.

Movant's argument is faulty for a number of reasons. First, Ms. Kirpalani's testimony in the civil case does not contradict her testimony at Movant's trial. Second, even if her trial testimony was false, there is no evidence that the prosecutor knew it. Third, the issue of Ms. Kirpalani's father's will was not relevant to the issues being tried. Fourth, Movant fails to establish that there is a reasonable likelihood that the alleged false testimony could have affected the outcome of the verdict.

Therefore, this claim of prosecutorial misconduct fails.

III. Unfair Treatment by the District Court

Because Movant did not raise this claim on appeal, it is procedurally barred unless he can show cause and prejudice or actual innocence. Notwithstanding whether Movant can show cause and prejudice or actual innocence to avoid a procedural bar, as discussed below, this claim is denied on the merits.

Movant argues that the Court's behavior, making disparaging remarks and displaying a hostile attitude toward defense counsel, was so prejudicial that it deprived Movant of a fair trial. Movant contends that the Court improperly admonished, criticized and belittled defense counsel, implied to the jury that defense counsel were not credible or competent, and aligned itself with the

prosecution in the eyes of the jury.

"A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if it abuses that discretion.  A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition.  A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." United States v. Laurins, 857 F.2d 529, 537 (9th Cir. 1988).

In some instances Movant cites, the Court was discussing matters with both parties when the jury was not present.  See e.g., RT 62, 724-25.  Such rulings could not prejudice the jury against him.

The Court made proper rulings within the scope of its duty to enforce the Federal Rules of Evidence, to ensure the orderly presentation of evidence and to prevent undue repetition. Therefore, this claim is denied.

IV. Change in Supreme Court Law

Movant argues that in United States v. Santos, 533 U.S. ___, 128 S. Ct. 2020 (2008), the Supreme Court announced a new interpretation of the word "proceeds" in 18 U.S.C. § 1956, one of the federal money laundering statutes, such that his conviction for money laundering under 18 U.S.C. § 1957(a) should be reversed.

Money laundering involves the use of the proceeds of specified

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

unlawful activities.   18 U.S.C. § 1956(c)(7); 18 U.S.C.
§ 1957(f)(3).   In <u>Santos</u>, an illegal gambling case, the Supreme
Court considered whether the term "proceeds" in § 1956 means
"receipts" or "profits."   <u>Id.</u> at 2022.   A four-Justice plurality
concluded that the term means "profits."   <u>Id.</u> at 2025.   A four-
Justice dissent opined that the term means "gross receipts."   <u>Id.</u>
at 2044 (Alito, J. dissenting).   Justice Stevens concurred in the
judgment vacating the conviction.   <u>Id.</u> at 2031-32 (Stevens, J.
concurring).   Justice Stevens agreed with the plurality that
"proceeds" means profit, but only when applied to illegal gambling
activities.   He opined that "proceeds" may mean gross receipts when
applied to other unlawful activities.   <u>Id.</u>

Justice Stevens agreed with the dissent that the legislative
history of § 1956 dictates that "proceeds" includes all gross
receipts when the specified unlawful activity "involves the sale of
contraband and the operation of organized crime syndicates
involving such sales."   <u>Id.</u> at 2032.   However, he found a lack of
legislative history addressing the definition of "proceeds" when
the specified unlawful activity involves gambling, as in <u>Santos</u>.
<u>Id.</u> He emphasized that the interpretation of "proceeds" as "gross
receipts" for a gambling operation would create a "merger" problem;
that is, the defendant could be charged twice for the same
activity.   <u>Id.</u> at 2033.   He concluded that "proceeds" means
"profits" in the context of illegal gambling operations.   <u>Id.</u>
Justice Stevens opined that Congress had left the term undefined
and that "'proceeds' need not be given the same definition when

applied to each of the numerous specified unlawful activities that produce unclean money." Id. at 2034 n.7. Thus, according to Justice Stevens, in gambling cases, the term "proceeds" means "profit," but in drug trafficking cases, it means "receipts" and in other cases the meaning depends upon whether defining "proceeds" as "receipts" would produce a merger problem. Id. at 2031-32, 2034, n.7.

"When a fragmented Supreme Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest ground." Marks v. United States, 430 U.S. 188 (1978). Under Marks, Justice Stevens' concurrence is the holding of Santos because he concurred in the judgment on the narrowest ground. See United States v. Prince, 2008 WL 4861296 (W.D. Tenn.) (Marks dictates the holding of Santos is the position taken by Justice Stevens).

This Court will not extend the narrow holding of Santos to invalidate the money laundering convictions here, which were based on the proceeds of mail fraud, not a gambling operation. Furthermore, the sentence Movant received for each money laundering count was concurrent with his mail fraud sentence. Thus, Movant was not given a longer sentence because he was convicted of both money laundering and mail fraud.

Therefore, Movant's claim based upon Santos is denied.

CONCLUSION

34

**United States District Court**
For the Northern District of California

1   Movant's motion for leave to amend (Docket # 347) is granted.

2   Movant's § 2255 motion (Docket # 311) is denied and Movant's

3   motions to dismiss (Docket # 324), to strike response (Docket

4   # 337), for an expedited ruling (Docket # 340), and to expunge the

5   record (Docket # 352) are denied.   The clerk shall close the file.

6

7   IT IS SO ORDERED.

8



9   Dated: 3/10/09                    _____

10  _____        CLAUDIA WILKEN
                                       UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

35

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

Bhatia,

      Plaintiff,

  v.

USA,

      Defendant.

_____/

Case Number: CV07-05583 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 10, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

**Lal Bhatia**
97562-011
Taft Correctional Institution
P.O. Box 7001
Taft, CA 93268

**Stephen George Corrigan**
U.S. Attorney's Office
1301 Clay St. Room 340S
Oakland , CA 94612

Dated: March 10, 2009

                      Richard W. Wieking, Clerk
                      By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California